Young v. Wells Fargo Bank, etc. et al. Good morning, Your Honors. My name is Attorney Anthony Alva. I represent the Plaintiff Appellate in this matter, Susan K. Young. I'm prepared to go forward. This is an appeal of a summary judgment dismissal of Ms. Young's complaint that was brought under the Home Affordable Modification Program. This matter had been before the Court a couple of years ago and was remanded back on three of the original counts of the complaint. We have Count 1 under contract, breach of contract. Count 5, a general law Chapter 93A claim under the Massachusetts statute. And under Count 6, for further equitable relief. The District Court judge, after having been briefed on the matter and considering the defendant's motion for summary judgment, found that there were no material facts at issue on all three of the counts and therefore moved to dismiss all three of them and bank completely, leaving none left for the complaint. It is our contention, as we have briefed, that there were, in fact, material facts at issue that precluded summary judgment on all three of the claims, contract, general law Chapter 93A, and the equitable complaint. And therefore, summary judgment was not proper and the matter should be remanded back to the District Court for trial on the merits. Getting into some of the specifics, the well-worn standards for summary judgment cases is if there are no material facts at issue, then summary judgment can be appropriate. In this case, there are very clear issues of material fact. By way of background, the defendants, Wells Fargo Bank and Homeward Residential, formerly known as American Homeward Mortgage Servicing Company, had contended that Ms. Young breached, almost from the beginning, the operative contract in this case, which was a TPP, Temporary Payment Plan, which is the gateway to a permanent modification under the HANT program, by failing to make the payments on time as required by the program. We have disputed that. A deposition took place of the defendants' employee most knowledgeable about the program. Assuming you're right about all of this, I thought there was an independent second ground in which the District Court concluded you lose on the contract claim, which was no evidence of damages, which I didn't see you addressing in your brief. On the contract claim? On the contract claim, correct. Where in the brief do you talk about the damages on the contract claim? Well, we actually have, in the brief, we mentioned that, as was originally argued before the court, Ms. Young did establish damages. For one, prior to litigation, she had to engage legal counsel in order to attempt to resolve the situation with the defendants, and that was not successful. She testified that her legal expenses were at or about $1,000. Further, Your Honor, there is a link between the 93A claim and the contract claim. The 93A claim, and I do cite the cases, state that it goes beyond the traditional damages that normally would be very restrictive in terms of what an individual can recover for contract. If you don't prevail on the 93A claim, do you then agree that the damages that you say are linked to the 93A claim are not going to be available on the contract claim because they haven't been argued in the briefs? No, because we did argue that Ms. Young did have money damages resulting from the breach of the contract. Again, I would go towards that. I'm just asking about the link that you're making between the 93A claim and the breach of the contract claim. If I understand Your Honor's question correctly, if the 93A claim is upheld to be dismissed under Rule 56, I do believe, and I don't believe that we waived the argument on damages on the contract claim because she at the very least You have the $1,000 that you're claiming. Yes, and there's also the consideration that she paid. She made the payments under the contract. We did have on our complaint, we were seeking by way of relief, a requirement that the, I believe it was one for prayer relief C, that the client be permitted to provide to Ms. Young the benefits of the contract, including any adjustments made arising from the defendant's breach. Can you go back as far as 2008, which included the forbearance agreement? It's undisputed. There's no disputed material fact that my client was told by an employee of the defendant's that, but for the fact that her payment wasn't credited, she was forced to go into the forbearance agreement. And so these damages could go back potentially quite far. We were actually seeking that. But you don't make, I mean, I'm just looking at the brief. This is the argument. Neither count one for breach of contract, count 593A, or count six of the complaint for relief are subject to dismissal, because there's sufficient material facts showing that plaintiff did not breach the contract at issue and that the defendant's violated the statute, no mention of damages. And I'm going through the whole thing on the argument, and I don't see any reference to the damages until maybe when I get to the discussion of count five on 93A. So how can you be raising a challenge to his conclusion about lack of damages on the breach of contract claim? Because you just don't mention it in the brief. The way that this has been argued for the court in the past, which I would continue today, is that these two counts are linked as the cases that I cite under the 93A claim. It creates new claims that would traditionally not be considered counts under contract or claims under contract. Would that be an argument for why you have an argument about there being damages if there's a valid 93A claim? I'm asking on the contract count. Just looking at that alone, the only argument you seem to make is that there were material facts as to whether there was a breach. Not that if there was a breach, there were also damages just on the contract. In my arguments before the court, verbal, in the actual brief submitted to the court, the intent has been to link both, one and the other. And I have always stated what the actual potential damages were. We were at one point also arguing the emotional distress damages, which that count was dismissed by the lower court and that was upheld here. So we didn't have that particular argument anymore as far as damages go. But it's been always, I would not see that there's been any waiver here, Your Honor, because we have made it clear that Ms. Young, rather than double briefing it in terms of the damages, whether it's under 93A or the contract, they are linked. What do you mean double briefing? You don't even, you don't mention it until your reply brief anyway. You mention 93A on page 26 of your brief, but with respect to damages, you don't get to that until your reply brief. That was because we believed that we had adequately, I believe that we had adequately argued that issue on the actual damages judge. Speaking about argument, didn't you argue below that you had not paid in a timely fashion and that time was of essence? Didn't you admit that down below? The dates of the payments are established by the record. What we argued that the two things, Your Honor, that come immediately to mind, one was that under the defendant's own criteria, a payment would be considered late unless it was at least 30 days beyond the due date. That was one item. The other is the admissions, the January 13th letter that said payments were not timely. There was uncontroverted facts from the defendant's own records where my client was verbally notified that, no, she had not reached the program, that she should continue making the payments. There was their admission by their phone logs in January of 2010. And then the second item was their admission to Mr. DeSalvatore, who was assisting Ms. Young in her effort to try and resolve the case, and he actually put on record in a letter stating that the January 13th, 2010 letter had been sent in error. So in regards to the times of the essence issue, there's a question of fact in that regard, too. Can I ask you a question about that? No, go ahead. Did you or did you not agree in oral argument before this report that the payments had not been made in a timely fashion and that time was of essence according to the contract? The payment, I believe, was posted. Can you just answer yes or no? I would say yes under the context which I previously explained to Your Honor in answer to your question. We made it clear that the dates of the postings were, there's no question of fact about the dates of the postings. We also made the argument before the court, I believe, that one of the postings of the due date was actually on a holiday, and it would have been impossible for the defendants to actually have processed the check even on that particular day, on the New Year's Day. And that's why I go back to the facts established by the record or the disputed facts established by the record. There's a HAMP handbook in the record, the guidelines, and there's a provision in there that says, that seems to say anyway, that payments are timely if they're all made before the end of the trial period, which would be January 31st. Was that provision brought to the attention of the district court? No, it wasn't, Judge. What we focused on was the statements by Ms. Kearse, the defendant's opponent, and by the log entries and the statements that were made both to Ms. Young and to Mr. DeSalvatore on that issue. I would go back on the issue of the damages because that has been one of the weak points of our claim here. I would just emphasize with your honors that we, that both were linked, the two counts, Counts 1 and Count 5 on the 93A issue in that, in terms of damages that my client has suffered, specifically on 93A also, or on the contract claim, there would be the expectation. The court found that there was no question of material fact because we did not produce an expert in regards to Ms. Kearse to counter her testimony, but it is our contention that Ms. Kearse, on her own testimony, contradicted herself. For example, the district court judge stated that she was the most knowledgeable about the provisions of the HAMP program and what its requirements were, but she testified that she couldn't recall any specific training on all of the HAMP program or its provisions and that they didn't have any evidence. In fact, she testified that the log entries could not be interpreted completely by her. She had to use some speculation because there was no uniform training by all of the employees for the defendants on what those entries meant. There was no standard form of abbreviation, and she also testified that there were many, many bank employees who did not coordinate their actions in regards to representations that were made to Ms. Young. On the agency issue that's important, the district court judge found that Wells Fargo had not been sent a 93A letter, but that Home Order, AHMSI, had. We argued that before the court, and I will concede the argument was very brief. It seemed to me that under Massachusetts law, it was black letter law that an agency relationship exists here that would link the defendant, Wells Fargo, to both of them to respond. The record is very clear that the 93A letter essentially was completely ignored. No documents or evidence was ever produced by the defendants that they had actually forwarded the document to their legal department. Ms. Kearse, the defendant's opponent, testified that that document would have gone to their correspondence department, showing that there's a complete lack of any mechanism whatsoever to address any good faith effort by Ms. Young in this case to forward a demand to try and resolve the situation before having to resort to litigation. The record here is very clear in regards to two huge organizations giving mixed messages to Ms. Young about whether she breached or whether she didn't breach. When it came to breach, the notices were in writing by a computerized system, which Ms. Kearse testified she did not understand and had no input into actually running it. The record is clear that the defendant's own documents show the computer system sent out a notice of error automatically, but that the employees who actually worked and spoke with my client and Mr. DeSalvatore said, no, that was a mistake. That was not done properly. It shouldn't have been done. But they never would put that in writing. Overall, all the facts in this case, going back to 2008 when Ms. Young attempted a forbearance agreement and was told by their own employee, the defendant's own employee, she would have had to do that, that it shows a very serious and just reckless behavior by huge institutions. And again, on the issue of 93A and the equity count as well, Massachusetts law takes into consideration that the court should consider the position, vis-a-vis the defendant's position as an individual against large institutions. Thank you. Thank you. Good morning. May it please the court. Marissa DeLinks on behalf of Wells Fargo Bank N.A. as trustee for Option 1 Mortgage Loan Trust 2007-CP1 and Home and Residential, Inc. I would like to just first begin with the court's questions to opposing counsel regarding the waiver of the argument pertaining to damages and agree with the court that, indeed, there were two bases upon which summary judgment on count one was entered, one of which was that Ms. Young failed to produce any evidence that she was damaged as a result of the purported breach of the trial payment plan. And the court went to great lengths to talk about the lack of, the type of evidence she needed to produce and failed to produce. And in the brief to this court, there is no mention at all as to why those findings were incorrect. There is a mention, because I looked carefully, I wanted to make sure I was getting it right, there is a mention at the end of Ms. Young's brief, I think it's at page 27, where she says that there was evidence by way of her testimony that she sustained damages. And she cites to her deposition testimony. But in that deposition testimony, what she says is, I was damaged because I had to make three payments under the trial payment plan and I had to make mortgage payments from the beginning of my mortgage. Those are not the damages that she has to be able to show in order to prevail on the TPP claim. She has to be able to show that the financial documents that she provided under the HAMP guidelines would have resulted in an agreement that was different than the permanent loan modification agreement she received in June of 2010. She presented no evidence in that regard. She presented no evidence that the monthly payment amount in the permanent loan mod agreement that she received was any different than any other agreement she might have received. There is no evidence that she was going to pay interest rates that were higher, no evidence that she was going to pay late fees of any kind since those were waived. There is just simply nothing in this record to show that as a result of the failure to provide her with a permanent loan mod under HAMP on February 1 of 2010, that Ms. Young sustained any damages whatsoever. And on that basis, summary judgment properly entered on count one. The other basis, of course, was the failure to perform. And the court touched upon that a little bit. I would just say that the district court correctly looked at the trial period plan and found that the term to make the three payments on or before the three dates that they were due was a material term of the agreement. There were only three things she had to do, and that was make the payments on time, provide the documents that were requested, and answer truthfully. That's it. One of the things the agreement says is if you do not make the payments on time, you're not entitled to a permanent loan mod under HAMP. It's an essential term to the contract. As Judge Torella said, Ms. Young admitted she did not make the payments on time. The record shows she didn't make the payments on time. Is that legally true, though? Is it legally true in terms of the HAMP? Yeah. Well, you know, I thought it was interesting that Your Honor noted that there was a HAMP guideline in the record. I question whether or not that guideline is the actual guideline that was in effect at the time this agreement was entered into because this was early on when the HAMP program just began. So I can't tell you whether or not that's legally correct. I can only tell you what's in this record, and that is Ms. Kearse, who said the payments were untimely and our practice at the time is I can't put you back into HAMP. You get kicked out of the program. All we can do is try and work you up for another loan modification, which is exactly what Homer did, and that's what the record shows. So, again, that's a second basis. I think the main basis to affirm summary judgment is the fact that there was no evidence of damage produced by Ms. Young. With regard to the 93A claim, I'll note also I did hear Attorney Alva say that she did have evidence of damage, that she had to engage legal counsel. But I will tell you the record will show this court that the $1,000 she purportedly paid was paid to Dave Crowley, which was back in 2009. So it had nothing to do with this temporary payment plan and the delay in providing her a HAMP mod. So it has nothing to do with this claim. I do not understand counsel's argument that the breach of contract claim is linked to the 93A claim. The 93A claim is premised on the four specific acts that are set forth in Ms. Young's January 29, 2011, letter. That's what Massachusetts Law requires. I'm sorry to take you back. The $1,000, so it's undisputed in the record that it's not, it couldn't possibly be considered as damages? It's undisputed in the record that, first of all, there's no evidence she paid it to Mr. Crowley. She only testifies that she did. Assuming she did, she paid it to him for services provided in 2009. This temporary payment plan was entered in 2010, 2009-10, but the breach, the contract claim. But the record is clear that she paid it previously? Correct. And it was unrelated? Correct. And what about her, I think it was deposition testimony, that her credit got ruined? Right. Well, I don't recall that she even said that it was. She claimed that it was ruined, but I asked her if she had a credit report and she didn't produce one for me. What's the difference between saying it was ruined and claimed it was ruined? Well, I think she has to produce evidence that it was ruined, but I think there's another question. Can she show or did she show that her credit was purportedly ruined as a result of failing to provide her with a HAMP modification agreement on February 1 of 2010 and instead providing her with a permanent loan mod agreement on January 14 of 2010? That's the measure of damages here on the breach of contract claim. And she couldn't produce any evidence in that regard that her credit was in any way ruined. And I'd submit to the court that, unfortunately, Ms. Young, the record is clear. She defaulted on her loan in 2008. She defaulted on the forbearance agreement in 2009. She then refused a permanent loan modification in 2010 that would have allowed her to start paying current on her mortgage. So how can she show that her lack of her credit rating has been damaged by these defendants as opposed to herself? What would have happened had she not been late under the trial period? Sure. If she had not been late, then she would have been provided with a permanent loan modification under HAMP. Now, what we can't say and what Ms. Young had to be able to show is were the terms of that purported agreement There's nothing in the record that indicates what the universe of HAMP modifications are compared to what you get from Wells Fargo. You would think the HAMP program is set up on the understanding that it's better. Is that just something we're not permissibly able to just, it's a common sense of the matter that there must be a reason that people would like to pay on time? I mean, it's an odd incentive structure for getting people to pay on time. Whether you do or not, it doesn't matter because what you get under HAMP is no better than you get from the bank. Well, I think here's the thing. Under HAMP, you're entitled to, if you comply with the terms of the trial period plan, you're entitled to a modification. But in a situation like this when your mortgage is securitized, the investor may not allow a traditional loan modification. So if you don't comply with a trial period plan, you may not be entitled to any other loan modification. Here, the defendants were able to provide her with a traditional loan modification agreement because it was allowed by the investor guidelines. And so this is a benefit to Ms. Young. But I think in the universe of loan modifications, there would be the difference, if that makes sense. Now, the 93A claim with regard to Wells Fargo was probably- And so just going back to Justice Howard's question, the evidence in the record about the payment to her counsel- Yes. Was not payment she incurred to secure the modification she eventually got from Wells Fargo? That's right. Or was it? No, it wasn't. She actually hired Dave Crowley to help her with the forbearance agreement. That was back in 2009. And then he did nothing further for her. In fact, she turned around and hired Jerry DeSalvatore, who was the paralegal, and he didn't charge her any fees. And he was the one who negotiated the trial payment plan under HAMP with Homeward. So that $1,000 had nothing to do with the HAMP mod. The 93A claim with regard to Wells Fargo, there's no letter sent to them. The law in Massachusetts is quite clear that in order to sustain a 93A claim, the plaintiff has to be able to show that she sent a demand letter to each defendant, that the demand letter specifically identifies each defendant, that the demand letter specifically identifies the conduct that each defendant did that violated the statute, and we have none of that here. And so summary judgment with regard to Wells Fargo properly entered on 93A. With regard to Homeward, we have another waiver to submit to the court, and that is that there were two bases upon which the district court entered summary judgment with regard to the 93A claim against Homeward, and that was that none of the alleged acts that were set forth in the January 29, 2011 demand constituted violations of the statute under 93A, and then secondly, Ms. Young failed to produce any evidence that she was damaged by those acts or that those damages were approximately caused by Homeward. And here in the brief, in the opening brief once again, there was not one mention, not any developed argument whatsoever, about why the district court's finding that the acts did not violate the statute were incorrect. For that basis, summary judgment can be affirmed on the 93A claim. And with regard to the issue of proximate cause and damages, the one claim that is made by counsel with regard to the 93A claim against Homeward is that he showed, even if he didn't show, there were any damages in the form of credit rating being dropped or equity in the home being lost or having to then pay increased interest rates on loans that she may obtain in the future, which is the universe of damages that she claimed. He says, even if she didn't show that, Massachusetts law allows him to recover because he can show there was loss in the form of an invasion of a legally protected interest. And I submit to the court that his reading of Hirshanaw is wrong. The Massachusetts Supreme Judicial Court has found that it is not sufficient to sustain a 93A claim based on a legally protected interest. That is what Hirshanaw says. And this court recognized that in the rural versus Fort Dodge animal health case, where it says we've gone back to a different day now. The Massachusetts Supreme Judicial Court requires that you show that you have sustained actual damages in the form of a loss of money or property. And so for that reason, because there is no damages here that have been shown by evidence, the summary judgment with regard to the 93A claim against Homeward was properly entered. With regard to the equitable relief claim, this court, the last time we were here, recognized that the equitable claim is actually derivative of the breach of contract in the 93A claims. And because Ms. Young cannot sustain those claims, she cannot sustain her equitable relief claim. But I will just add one other thing, and I mentioned this in my brief. There is an independent basis upon which this court can grant or allow a firm summary judgment on the equitable relief claim, and that is in order to obtain that relief, Ms. Young has to come to this court with clean hands with regard to the relief she's seeking, the very claim she's seeking. And here, she doesn't have clean hands. The record undisputedly shows she defaulted on her mortgage back in 2008. She defaulted on a forbearance agreement in 2009, and she has been living in this property without paying anything since February of 2010 at the expense of the defendants who continue to pay her property taxes and her insurance. And that is not a person, a plaintiff, that comes to court with clean hands. And because of that, she is precluded from recovering for equitable relief. I think with that, unless the court has any further questions for me. Thank you so much. I appreciate your time this morning.